**UNITED STATES, Appellee,**

v.

**Shane L. HILL, Private First Class, U. S. Army, Appellant.**

No. 33980,
CM 434629.

U. S. Court of Military Appeals.

May 15, 1978.

Colonel Robert B. Clarke and Captain Peter V. Train argued the cause for Appellant, Accused. With them on the briefs were Lieutenant Colonel John R. Thornock and Captain Buren R. Shields, III.

Captain Glen D. Lause argued the cause for Appellee, United States. With him on the briefs were Colonel Thomas H. Davis, Major John T. Sherwood, Jr., Major Steven M. Werner, and Captain William C. Kirk.

Opinion of the Court

COOK, Judge:

Appellant was convicted, by a general court-martial military judge sitting alone, of robbery, in violation of Article 122, Uniform Code of Military Justice, 10 U.S.C. § 922. We granted review to determine whether the appellant's pretrial statement was properly admitted into evidence.

The facts are not in dispute. Appellant was apprehended during the early morning hours of September 20, 1975. At approximately 6:00 a.m. on that day, he was interviewed by Special Agent Steven Volk, U. S. Army Criminal Investigation Detachment (CID), who advised him of his Article 31, UCMJ,[1] and *Miranda/Tempia*[2] rights. Appellant told Agent Volk that he wanted counsel and indicated he did not wish to make a statement. At that point, the interview terminated and appellant was placed in a detention cell with three other individuals who allegedly were involved in the same incident.

Special Agent Volk left the area without making any effort to obtain counsel for appellant. He returned at approximately 3:00 p.m., September 20. His testimony as to what occurred upon his return is as follows:

> A: I had occasion to come back. I was tired and I was up until 10:00 or 11:00 in the morning and I went

1. Article 31, Uniform Code of Military Justice, 10 U.S.C. § 831.

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *United States v. Tempia*, 16 U.S.C.M.A. 629, 37 C.M.R. 249 (1967).

home, slept a couple of hours, and came back in the afternoon to prepare the report, and that's when I was in the vicinity of the MP desk and the detention cell, and I was talking with them and asked them if they were getting food, if they were being treated okay, and also had told them that we had information—that I had information, which I did, in the form of a statement, that these four people had committed a robbery, admitted by Hunter. The conversation with the people—they wanted to talk to me individually.

Appellant was interviewed on an individual basis. Agent Volk admitted he did not ascertain whether counsel had been provided for the appellant, but he readvised the appellant of his rights and received an acknowledgement from him that he understood those rights and no longer desired counsel. Agent Volk questioned appellant regarding his involvement in the incident. Appellant executed a statement in which he admitted his presence at the site of the robbery, but advanced an innocent explanation for being there. Over defense objection, his statement was admitted into evidence.

In *United States v. Lowry,* 2 M.J. 55 (C.M.A.1976), and *United States v. McOmber,* 1 M.J. 380 (C.M.A.1976), the Court held that when a law enforcement investigator is on notice that an accused is represented by counsel, Article 27, UCMJ,[3] requires that such counsel be given the opportunity to be present during any interrogation of the accused. As there is no evidence on the matter, we assume, for the purpose of this appeal, that appellant was not represented by counsel. Thus, neither *Lowry* nor *McOmber* are controlling. However, while a request for counsel does not forever bar a subsequent interview, the fact that the request has been made makes it more difficult for the Government to satisfy its burden of establishing that an accused has

voluntarily waived the right to counsel and the right to have counsel present at an interview. *United States v. Heslet,* 23 U.S.C.M.A. 88, 48 C.M.R. 596 (1974); *accord, United States v. Solomon,* 17 U.S.C.M.A. 262, 38 C.M.R. 60 (1967). As noted by the United States Supreme Court in *Michigan v. Mosley,* 423 U.S. 96, 104, 96 S.Ct. 321, 326, 46 L.Ed.2d 313 (1975), regarding the right to remain silent:

> [T]he admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his "right to cut off questioning" was "scrupulously honored."

Thus, the Court held in *Mosley* that a pretrial statement was properly admitted into evidence although the accused had previously asserted his right to remain silent. The Court also implied in *Mosley, supra,* 423 U.S. at 104 n. 10, 96 S.Ct. at 326, that an assertion of the right to counsel may dictate a contrary result as *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), "distinguished between the procedural safeguards triggered by a request to remain silent and a request for an attorney and directed that 'the interrogation must cease until an attorney is present' only '[i]f the individual states that he wants an attorney.' 384 U.S., at 474, 86 S.Ct. 1602." However, a *per se* exclusionary rule appears to have been rejected in *Brewer v. Williams,* 430 U.S. 387, 405–06, 97 S.Ct. 1232, 1243, 51 L.Ed.2d 424 (1977), when the Court held:

> The Court of Appeals did not hold, nor do we, that under the circumstances of this case Williams *could not,* without notice to counsel, have waived his rights under the Sixth and Fourteenth Amendments. It only held, as do we, that he did not. [Footnote omitted.][4]

*See United States v. Rodriquez-Gastelum,* 569 F.2d 482 (9th Cir., 1978).

Looking at the evidence in the present case, we cannot conclude that it supports

---

3. Article 27, UCMJ, 10 U.S.C. § 827.

4. As we observed in *United States v. Lowry,* 2 M.J. 55 (C.M.A.1976), and *United States v.*

*McOmber,* 1 M.J. 380 (C.M.A.1976), Article 27 requires a contrary result where a police agent is aware of the attorney-client relationship.

the trial judge's determination that appellant had voluntarily waived his rights to counsel and to remain silent. When appellant requested counsel and indicated he did not want to make a statement, he was returned to a detention cell. The agent conceded that he made no attempt to determine whether the appellant's request for counsel had been honored, or if any effort had been made to obtain counsel for appellant. As appellant was incarcerated, he obviously could not consult with counsel without the cooperation of the enforcement authorities. Nevertheless, the agent confronted the appellant, approximately 9 hours later, with the assertion that a statement implicating him had been made by one of the participants in the robbery.[5] Rather than demonstrating a voluntary relinquishment of his rights, such evidence reflects an erosion of such rights by the government official involved. *See United States v. Collier,* 1 M.J. 358 (C.M.A.1976); *United States v. Borodzik,* 21 U.S.C.M.A. 95, 44 C.M.R. 149 (1971). Under such circumstances, the appellant's rights have not been "scrupulously honored."

The decision of the United States Army Court of Military Review is reversed, and the findings of guilty and the sentence are set aside. The record of trial is returned to the Judge Advocate General of the Army and a rehearing may be ordered.

PERRY, Judge (concurring):

The law requires that an interview be terminated upon the request of an accused to consult with counsel. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *United States v. Tempia,* 16

U.S.C.M.A. 629, 37 C.M.R. 249 (1967). To permit the subsequent renewal of that interview without assuring that the accused has in fact consulted with an attorney and does not desire the presence of that attorney during the further interrogation, renders the fundamental right vulnerable to sabotage. Therefore, if the rights conferred by Articles 27 and 31, Uniform Code of Military Justice, 10 U.S.C. §§ 827 and 831, are to have meaning, I am of the opinion that once an accused requests counsel during an interview by a law enforcement agent and the interview is terminated therefor, subsequent renewal of that interview is not permissible without the presence of counsel unless properly waived.[1] Waiver by the accused of the right to counsel at the subsequent session in this case is not at issue.

FLETCHER, Chief Judge (dissenting):

I must disagree with the majority as to their resolution of this matter.

I agree that this case does not fall within the purview of *United States v. Lowry,* 2 M.J. 55 (C.M.A.1976), and *United States v. McOmber,* 1 M.J. 380 (C.M.A.1976).[1]

My disagreement is with the majority's failure to faithfully follow *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and *Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975), in vacating this conviction. Its dependence on a rule of waiver amorphously embraced in the term "scrupulously honored," leads to an unwarranted result in the present case and unnecessary confusion for future courts-martial.

In *Miranda* the Court said as to a request for attorney:

5. Contrary to the dissenting judge, I do not conclude from the evidence of record that appellant "initiated" the second conversation which resulted in his incriminating statement. The agent conceded in his own testimony that appellant and the other individuals involved in the incident were told that the agent possessed information which implicated them in a robbery. I can think of no better way to elicit a response from the individuals involved. Furthermore, the appellant's confinement for nine hours without any effort being made to honor his request for counsel rendered the agent's

advice "the second time around" a meaningless and empty phrase to the appellant.

1. Naturally, if the interviewing agent *does* ascertain that the suspect or accused has seen an attorney, the agent is required to give counsel notice of the renewal of the interview. *United States v. Lowry,* 2 M.J. 55 (C.M.A.1976); *United States v. McOmber,* 1 M.J. 380 (C.M.A. 1976).

1. *See Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977).

If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning. If the individual cannot obtain an attorney and he indicates that he wants one before speaking to police, they must respect his decision to remain silent.

This does not mean, as some have suggested, that each police station must have a "station house lawyer" present at all times to advise prisoners. It does mean, however, that if police propose to interrogate a person they must make known to him that he is entitled to a lawyer and that if he cannot afford one, a lawyer will be provided for him prior to any interrogation. If authorities conclude that they will not provide counsel during a reasonable period of time in which investigation in the field is carried out, they may refrain from doing so without violating the person's Fifth Amendment privilege so long as they do not question him during that time.

If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. *Escobedo v. State of Illinois,* 378 U.S. 478, 490, n.14, 84 S.Ct. 1758, 1764, 12 L.Ed.2d 977. This Court has always set high standards of proof for the waiver of constitutional rights, *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), and we reassert these standards as applied to in-custody interrogation. *Id.* 384 U.S. at 474–75, 86 S.Ct. at 1628.

I read from the statement by the Court a four-part standard as follows:

1. The suspect must be informed of his right to consult with an attorney.

2. A request for an attorney stops the interrogation until an attorney is present.

3. If the authorities decide they will not provide an attorney for a reasonable time, they may do so, but can not question during this period.

4. If further interrogation is held without counsel and a statement obtained, a heavy burden rests upon the government to demonstrate that the suspect knowingly, intelligently and voluntarily waived his privilege.[2]

I would now test the facts of this case against the above standard. The appellant when first questioned was advised of his Article 31, Uniform Code of Military Justice, and *Miranda/Tempia* rights. He requested an attorney and the interrogation was stopped.[3]

The appellant was then placed in a detention cell with the three other suspects to the same crime. No attorney came to confer with the appellant. Special Agent Volk testified that nine hours later, after obtaining from another suspect a statement implicating the appellant:

A: I had occasion to come back. I was tired and I was up until 10:00 or 11:00 in the morning and I went home, slept a couple of hours, and came back in the afternoon to prepare the report, and that's when I was in the vicinity of the MP desk and the detention cell, and I was talking with them and asked them if they were getting food, if they were being treated okay, and also had told them that we had information—that I had information, which I did, in the form of a statement, that these four people had committed a robbery, admitted by Hunter. The conversation with the people—they wanted to talk to me individually.

Q: They wanted to talk to you?

A: They wanted to talk to me individually.

Q: PFC Hill wanted to talk to you?

---

2. *See also Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3. *See Michigan v. Mosley,* 423 U.S. 96, 104 n.10, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975).

A: He was one of them. I don't know exactly what order I took them down out of the D–cell.

The appellant was questioned a second time and advice was given under Article 31, UCMJ, and *Miranda/Tempia*.[4] The appellant gave a statement: the one in question.

Did the government in this case meet the heavy burden of showing that the appellant knowingly, intelligently and voluntarily waived his privilege against self-incrimination? I believe the answer is yes.

As can be seen from the testimony, the request to discuss the matter the second time was initiated by the appellant. Further, the appellant now had added to his knowledge the fact that one of his co-suspects had made a statement which implicated him. One other significant factor must be weighed; when the appellant was advised of his rights the second time around, he knew what would happen if he said he wanted the advice of counsel: the interrogation would stop. He had been there just that morning.

This court implemented Article 31, UCMJ, in 1967 with the case of *United States v. Tempia*, 16 U.S.C.M.A. 629, 37 C.M.R. 249 (1967), wherein a majority accepted the rationale of this privilege to confer with counsel as set forth in *Miranda*.

I believe a blanket prohibition against a police officer's subsequent communications with a suspect who has previously requested counsel is, at least under the circumstances of the present case, not consistent with the Supreme Court's position on this matter.[5] Accordingly, I would affirm the decision of the United States Army Court of Military Review.

---

4. *United States v. Tempia*, 16 U.S.C.M.A. 629, 37 C.M.R. 249 (1967).

5. *Michigan v. Mosley, supra* 423 U.S. at 102, 96 S.Ct. 321; *United States v. Rodriguez-Gastelum*, 569 F.2d 482 (9th Cir. 1978).