UNITED STATES, Appellee,

v.

David A. QUINTANA, Ship's Serviceman Seaman, U. S. Navy, Appellant.

No. 34,113.

NCM 76 1617.

U. S. Court of Military Appeals.

Oct. 23, 1978.

Appearances: For Appellant—*Captain Jay C. Keithley*, USMC (argued); *Lieutenant Commander William C. Henderson*, JAGC, USN.

For Appellee—Captain Christopher M. Klein, USMC (argued); Lieutenant Colonel P. N. Kress, USMC; Lieutenant Commander A. K. Llewellyn, JAGC, USNR; Lieutenant Commander N. P. DeCarlo, JAGC, USN (on brief).

Opinion of the Court

COOK, Judge:

A special court-martial consisting of military judge alone convicted the appellant of wrongfully appropriating ship's store funds during the period from June to October 1975, and the larceny of ship's store funds on December 15, 1975, in violation of Article 121, Uniform Code of Military Justice, 10 U.S.C. § 921. We granted review to determine whether appellant's pretrial statement to a Naval Investigative Service (NIS) agent, in which he confessed to the offense of wrongful appropriation, was properly admitted into evidence. We conclude that it was.

Defense counsel objected to the introduction of the statement and appellant testified on the issue as follows:

Q. Seaman Quintana, directing your attention to 18 December 1975, did you have occasion to converse with any NIS agent that day?

A. Yes, I did.

Q. Who, if anyone did you converse with?

A. I can't recall the name, ____

Q. What, if any rights did this man read to you?

A. That, I have the right to remain silent, I had a right to a lawyer, I had a right to terminate the questioning at any time.

Q. And, which if any of these rights did you elect to avail yourself of?

A. I told [him] that I wanted to see a lawyer, I wanted to terminate the questioning then. I had been advised by a shipmate that I should get a lawyer, and at that time he got mad, and he said, that if I got a lawyer, it would probably end up in a court-martial. That it would show that I had reason to fear something, they would have reason to think I was guilty. So, it kind of scared me. I was afraid to get a lawyer, because I did not want it to come to a court-martial.

Appellant further testified that his shipmate's wife, who worked in the NIS building, made an appointment for him to see a lawyer, but he did not keep the appointment as a result of the interview with the NIS agent on December 18. He made no incriminating statements on that day. However, on January 14, 1976, he was interviewed again by two agents, neither of whom was the agent he had seen on December 18. Neither agent referred to the December interview. They advised appellant that the purpose of the meeting was to conduct a polygraph examination of him which he had agreed to undergo; exactly when he had agreed to that examination was unstated and it might inferentially have been either during or after the December 18 interview. He was advised of his rights, but he did not assert them. Appellant admitted he was aware that the larceny from the ship's store was under investigation, but he maintained he was told he must reveal every other theft of which he was aware or the polygraph examination would not accurately reflect appellant's involvement in the theft under investigation.

Additionally, he testified he was advised that the answers he gave to questions about such thefts could not be used against him; accordingly, he admitted he had wrongfully taken money from the fund in an earlier period. This pretrial statement was admitted into evidence over defense objection.

Special Agent White interviewed appellant on January 14, 1976. His testimony indicates appellant was advised of his Article 31, UCMJ, 10 U.S.C. § 831,[1] and *Miranda/Tempia*[2] rights. Regarding the advice as to the nature of the offense under investigation, White stated:

Q. That is what I am asking you. What specifically did you advise him, sir.

A. I advised him that he was a suspect in a theft of U. S. government property, larceny of U. S. Government property, as I recall specifically, ship's store funds from the USS HASSAYAMPA.

Agent White further noted that he had not conducted an investigation of the incident in question and he was not told the details of any other interview.

Contrary to appellant's testimony, Agent White testified appellant was not advised that his answers to any question could not be used against him. He acknowledged that, when appellant admitted his wrongful appropriation of ship's store funds, he did not readvise him of his rights or redefine the nature of the offense under investigation.

The defense challenge to the admissibility of the pretrial statement on appeal is two-fold. The first is that the December 18 interview improperly restricted appellant's right to counsel and the January admissions were the product of that restriction. Secondly, he submits White's advice as to the nature of the offense was deficient because such advice did not include the acts of wrongful appropriation.[3]

---

1. Article 31, Uniform Code of Military Justice, 10 U.S.C. § 831.

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *United States v.*

*Tempia,* 16 U.S.C.M.A. 629, 37 C.M.R. 249 (1967).

3. A third objection submitted to the trial judge and the Court of Military Review was that appellant was improperly advised that his

■ At trial, the judge rejected the first aspect on the ground that:

> [E]ven, if, the interrogator on 18 December 1975, improperly advised the accused as to the effect of requesting counsel, such taint did not effect [sic] the accused['s] statement to Special Agent White on 14 January.

The Court of Military Review accepted the appellant's testimony that he was improperly advised of his right to counsel on December 18, but also found that the December interview did not taint the January statement. It further held appellant was adequately advised of the nature of the offense. This finding is reasonably supported by the evidence and we must, therefore, accept it. *United States v. Lowry,* 2 M.J. 55 (C.M.A.1976).

Relying on *Lowry* and *United States v. McOmber,* 1 M.J. 380 (C.M.A.1976), which require an agent, if he has notice that an accused is represented by counsel, to notify counsel of a proposed interview, appellant submits that rejection of his pretrial statement is required. He concedes that, unlike those cases, there was no attorney-client relationship established between him and a lawyer. Recently, in *United States v. Hill,* 5 M.J. 114 (C.M.A.1978), we noted that *Lowry* and *McOmber* do not apply when no attorney-client relationship has been established. We noted in *Hill* that assertion of the right to remain silent and the right to consult counsel do not forever bar a subsequent interview, although it "makes it more difficult for the Government to satisfy its burden of establishing that an accused has voluntarily waived" his rights. *Id.* at 115.[4] *Accord United States v. Heslet,* 23 U.S.C. M.A. 88, 48 C.M.R. 596 (1974); *United States v. Collier,* 1 M.J. 358 (C.M.A.1976). *See also Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975); and *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 423 (1977).

In *Hill,* the Court held that the Government had not met its burden of proof, but the facts of the present case support a contrary conclusion. The accused in *Hill,* after an initial interview at which he asserted his rights to counsel and to remain silent, was placed in pretrial confinement. Approximately 9 hours later, he was confronted by the same interrogator who told him a statement had been made by a co-accused which implicated him in the criminal venture. Appellant, Quintana, however, was not interviewed a second time until almost a month after the first interview. An appointment had been made for him with a military lawyer, but he did not keep it. Furthermore, he was not confined and was interviewed on the later date by two agents who did not participate in the first interview. Both agents advised him of his rights, including his right to counsel. As appellant had made no incriminating statements during the December 18 interview, there were no outstanding, illegally obtained, incriminating statements that could have influenced his decision to speak on January 14. We conclude that these circumstances provide a reasonable basis to support the finding by the trial court and Court of Military Review that the appellant's pretrial statement was not the product of improper advice regarding counsel by the NIS agent at the December 18 interview.

■ We turn now to consider whether appellant was adequately advised of the nature of the offense. Admittedly, he was advised he was suspected of larceny; he submits he should also have been advised he was suspected of the wrongful appropriation of money from the same fund during an earlier period. In *United States v. Rice,* 11 U.S.C.M.A. 524, 526, 29 C.M.R. 340, 342 (1960), we said:

---

statements could not be used against him. That issue involved resolution of a conflict between the appellant's testimony and that of Agent White. The conflict was resolved against appellant. *See United States v. Lowry,* 2 M.J. 55 (C.M.A.1976).

4. The Court specifically rejected an argument that the requirements of proof as to the right to remain silent are different from those as to the right to counsel.

The purpose of informing a suspect or accused of the nature of the accusation is to orient him to the transaction or incident in which he is allegedly involved. It is not necessary to spell out the details of his connection with the matter under inquiry with technical nicety.

Appellant's misuse of the fund was greater than the larceny of which he was informed, but that advice clearly oriented him to the fact that misuse of the ship's store fund was the object of the investigation. The appellant's disclosure of incidents of misuse other than that mentioned by the agent was within that frame of reference. Thus, we conclude that the advice was sufficient. In any event, the agent was not aware of the degree of appellant's involvement until the appellant made the statements in question. Therefore, the agent was not required to advise the appellant of such incidents. *United States v. Davis,* 8 U.S.C.M.A. 196, 24 C.M.R. 6 (1957).

The decision of the United States Navy Court of Military Review is affirmed.

FLETCHER, Chief Judge (concurring):

I concur. I would apply the concepts expressed in my dissent in *United States v. Hill,* 5 M.J. 114 (C.M.A.1978).

PERRY, Judge (dissenting):

I dissent. The appellant, eighteen years of age, was questioned on December 18, 1975, by Agent Coleman, of the Naval Investigative Service (NIS) concerning an alleged theft of $500 from the HASSAYAMPA Ship Store. The NIS agent began his interview by advising the appellant in accordance with Article 31, Uniform Code of Military Justice, 10 U.S.C. § 831; *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and *United States v. Tempia,* 16 U.S.C.M.A. 629, 37 C.M.R. 249 (1967). When asked whether he would answer questions for the agent, the appellant replied that a shipmate had advised him to say nothing without first securing the advice of a lawyer and that he did not want the interview to continue without the presence of a lawyer. Instead of terminating the interview, it is uncontradicted that Agent Coleman "got mad" and told the appellant that by availing himself of his right to counsel the appellant "would show that he had reason to fear something . . that [he] had something to be afraid of . . . something to hide; and that his commanding officer would have reason to think that he was guilty; and that if he got a lawyer his case would probably end up in a court-martial." The appellant testified that he became frightened and responded that he did not want the case to go to court-martial and that, therefore, he would not get a lawyer. In fact, the appellant decided to forego an appointment which he had with a military lawyer the following day because of the foregoing advice. Moreover, having erroneously admonished the appellant concerning the suggested pitfalls of consulting with a lawyer, Agent Coleman continued the interview and, eventually obtained the appellant's consent to be tested by polygraph examiners.

On January 14, 1976, the appellant was interviewed by two agents assigned to administer the polygraph test above adverted to. It is thus apparent that, even though they were not the agents who commenced interrogating the appellant on December 18, they were acting in furtherance of the investigation which Agent Coleman started and were in fact pursuing leads which Agent Coleman discovered during his unlawful continuation of the December 18 interview. They were part of the same investigation team which included Agent Coleman, who gave the appellant the erroneous advice concerning the effect of securing the advice and assistance of a lawyer. It is true that these agents commenced their interview by advising the appellant of his rights. During the interview which followed, the appellant made the inculpatory statement, later reduced to writing, which is the subject of this appeal.

The majority embraces the finding of the Court of Military Review that the December interview, at which the appellant was improperly advised of his right to counsel, did not taint the January statement. I disagree.

Agent Coleman not only gave erroneous advice, but contrary to *Miranda v. Arizona, supra,* and *United States v. Tempia, supra,* he continued the interview after the appellant stated his desire to consult with a lawyer before and during any interview. The agreement to submit to the polygraph examination and the statement which was ultimately obtained resulted from Agent Coleman's failure to promptly terminate the questioning. This case thus demonstrates the soundness of the *Miranda* court's reasoning. Once the accused states his desire to consult with a lawyer, he indicates his inability to cope with those who seek to question him. It is at that moment when the right to be assisted by a lawyer, guaranteed by the Sixth Amendment to the Constitution, offers its greatest protection. In my view, Agent Coleman should have promptly terminated the questioning when the appellant signalled his desire not to submit to questioning and his further desire to consult with a lawyer. Further questioning of the appellant without the presence of an attorney should not have been resumed absent a clear waiver of the right to an attorney. Under the circumstances of this case I cannot find waiver.