UNITED STATES, Appellee,

v.

Charles M. STARK, Specialist Four U.S. Army, Appellant.

No. 51,666.
CM 444038.

U.S. Court of Military Appeals.

Aug. 31, 1987.

For appellant: *Captain Floyd T. Curry* (argued); *Lieutenant Colonel Paul J. Luedtke, Major Eric T. Franzen, Captain Bernard P. Ingold* (on brief), *Colonel William G. Eckhardt, Colonel Brooks B. La Grua, Lieutenant Colonel Arthur L. Hunt, Captain Thomas J. Feeny, Captain David W. Sorensen, Captain Keith W. Sickendick, Captain Brian D. DiGiacomo.*

For appellee: *Captain Amaury R. Colon* (argued); *Colonel James Kucera, Lieutenant Colonel Adrian J. Gravelle, Major Byron J. Braun* (on brief), *Captain Andrew D. Stewart.*

*Opinion of the Court*

COX, Judge:

A general court-martial composed of officers convicted appellant of the unpremeditated murder of his wife, in violation of Article 118, Uniform Code of Military Justice, 10 U.S.C. § 918. He was sentenced to a dishonorable discharge, confinement for 50 years, total forfeitures, and reduction to E–1. The convening authority approved the sentence, and the Court of Military Review affirmed the findings and sentence as approved. 19 M.J. 519 (1984).

We granted review on the following issues:

## I

WHETHER THE MILITARY JUDGE ERRONEOUSLY ADMITTED STATEMENTS OF APPELLANT WHICH WERE INVOLUNTARY AS A MATTER OF LAW.

## II

WHETHER THE MILITARY JUDGE ERRED BY REFUSING TO ADMIT INTO EVIDENCE DEFENSE EXHIBIT J FOR IDENTIFICATION, THE VIDEOTAPES OF DR. ROLLINS' INTERVIEWS OF APPELLANT.

During a pretrial Article 39(a)[1] session, trial defense counsel moved to suppress a statement made by appellant to agents of the Criminal Investigation Command (CID) because: (1) the statement was the product of an illegal seizure of appellant; (2) the investigating agents ignored his request to remain silent; and (3) the statement was obtained through the exercise of illegal coercive techniques.

On the morning of August 19, 1982, German police authorities notified the CID that they had found a woman's body which had been identified as Emily Stark. At the same time, appellant was at a military police station reporting his wife's absence for the second time that day. CID Agent Paul Peterson had appellant brought to his office to inform him that the body of his wife had been found.

Thereafter, Agent Peterson learned that he might be investigating a homicide and advised appellant of his rights under Article 31, UCMJ, 10 U.S.C. § 831. Appellant waived his rights and expressed his willingness to make a statement. At no time throughout this period was appellant's departure from the station restricted or prohibited. Appellant was then taken to the hospital to identify his wife's body and returned to the CID office at approximately 12:30 in the afternoon. There, he was questioned until about 2:30 p.m. The inter-

view was terminated when appellant told the agents to either "book him or let him go"; however, he did not leave the station immediately. Instead, he let the agents know that he did not want to go back to his barracks, expressing the desire to spend the night at the home of friends. Agent Peterson made arrangments for him to do so, and appellant agreed to return to the CID Office the next day to take a polygraph examination.

Appellant and the apartment where he was staying were kept under surveillance throughout the night. Although the agents had asked appellant's friends to transport him back to the office the following day, they were concerned that he might miss the appointment. Consequently, early in the morning, Special Agent Petersen drove to the apartment to get appellant; they returned to the CID office, and appellant was interviewed by a polygraph examiner. The examiner also advised appellant of his rights, including those pertinent to the administration of a polygraph examination. Again appellant waived his rights and agreed to take the polygraph examination. When the examination was completed, the examiner reviewed the charts and discussed the case with appellant. After further questioning, a second polygraph examination was administered. Appellant then expressed a desire to speak to his friends, and arrangements were made to bring them to the CID office. They talked with appellant for about 50 minutes; sometime thereafter he executed the written statement giving rise to the motion to suppress.

The military judge denied the motion to suppress, finding that: appellant had not been detained unlawfully; he had been warned of all his rights; he had given the confession freely and voluntarily; and he had not been subjected to any undue influence or coercion. The judge admitted the confession subject to corroboration.

1. Uniform Code of Military Justice, 10 U.S.C. § 839(a).

## I

■ The threshold question of whether a person has been "seized," "arrested," or "apprehended" is one of fact which must be resolved by examining all the details and circumstances in the context of military society. *United States v. Scott*, 22 M.J. 297 (C.M.A.1986); *United States v. Schneider*, 14 M.J. 189 (C.M.A.1982); *United States v. Leiffer*, 13 M.J. 337 (C.M.A. 1982); *United States v. Kinane*, 1 M.J. 309 (C.M.A.1976). "[N]ot ... every interrogation at the 'police station' amounts to a custodial interrogation." *United States v. Schneider, supra* at 195 (footnote omitted). Appellant himself initiated contact with police authorities for the purpose of reporting that his wife was missing. The CID agent contacted appellant for the purpose of informing him of his wife's death. It was only after the agent learned that the wife died under suspicious circumstances that he attempted to interview appellant as a suspect. At that time, appellant was advised of his rights and obtained a waiver prior to the interview. When appellant required the agent to "book him or let him go," the agent did the latter. Further, the agent helped appellant arrange to spend the night at the home of some friends rather than return to his barracks.

There is nothing in the record to suggest that appellant's decision to return the following day for the purpose of taking a polygraph examination was not his own voluntary choice. The only arguable point that appellant might have is based on the fact that the CID agents showed up the following morning at his friends' house to transport him to the examination. Even under this circumstance, there was no force, compulsion, or order to report. We cannot speculate as to the course of conduct of the agent had appellant elected not to voluntarily go with the agents to the examination. Given the totality of the evidence before us, we conclude that appellant was never apprehended or arrested until after his confession had been freely and voluntarily given. We are satisfied that he was properly advised of his rights under Article 31 and the Constitution and that his decision to confess was the product of his own "unfettered will" to confess. *Compare United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), *with Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *see also California v. Beheler*, 463 U.S. 1121, 1125 n. 3, 103 S.Ct. 3517, 3520 n. 3, 77 L.Ed.2d 1275 (1983).

We are further convinced that appellant was not questioned after expressing a wish to remain silent. When appellant told the agents to "book him or let him go," they complied by letting him go. He voluntarily returned to take the polygraph examination the next day. Under these circumstances we are not convinced that the utterance of these words was a decision to exercise his "right" to remain silent; rather it was a decision to stop talking with the CID at that time. Because of the new rights warning given him by the polygraph examiner on the following day, we are satisfied that appellant's rights were not violated. *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975); *see United States v. Hill*, 5 M.J. 114 (C.M.A.1978); *United States v. Collier*, 1 M.J. 358 (C.M. A.1976); *United States v. DeChamplain*, 22 U.S.C.M.A. 150, 46 C.M.R. 150 (1973). We also observe that, unlike the accused in *United States v. Applewhite*, 23 M.J. 196 (C.M.A.1987), appellant never at any time invoked his right to consult with a lawyer. *See United States v. Harris*, 19 M.J. 331 (C.M.A.1985), *rev'd. on reconsideration*, 21 M.J. 173 (C.M.A.1985); *United States v. Muldoon*, 10 M.J. 254 (C.M.A.1981); *see also Smith v. Illinois*, 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984); *Edwards*

*v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

Finally, we are convinced beyond a reasonable doubt that the statement was not the product of unlawful coercion. *United States v. Schneider, supra.*

## II

The second granted issue was raised in the following factual context. Appellant defended against the charge claiming a lack of mental responsibility or insanity. Prior to the testimony of the defense expert psychiatrist, Dr. Bob Rollins, defense counsel moved the admission into evidence of videotapes of the interview of appellant conducted by the witness. The tapes were offered to aid the court members in evaluating the opinion of the psychiatrist. The members "would be able to see his [appellant's] reaction, to see how he responded to questions, to basically be able to put their own evaluations and to invite—to legitimately evaluate ... [the doctor's] opinion." Also, appellant's expert witness claimed that appellant was hypnotised during some of the interviews, a fact contested by the Government's experts.

The Government objected to the admissibility of the videotaped interviews on two grounds: First, that evidence adduced under hypnosis is not reliable; second, that the evidence is hearsay and would permit appellant to offer his testimony to the members without being called as a witness. The military judge sustained the objection, reasoning that the tapes "would be a left-handed way of putting ... [appellant] on the stand and not being subject to" cross-examination. He also reasoned that the testimony would be cumulative because it was already before the court members through the testimony of the experts.

It should first be noted that the military judge did not predicate any of his rulings on the fact that appellant may or may not have been hypnotised. We are not confronted with deciding the question of whether *hypnotically-refreshed testimony* or statements given by an accused under the influence of hypnosis are admissible in

evidence. *See Rock v. Arkansas,* —— U.S. ——, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987); *United States v. Robinson,* 21 M.J. 937 (A.F.C.M.R.1986), *pet. granted,* 23 M.J. 167 (1986). Thus, although we agree with the Court of Military Review's conclusion that the tapes were not *per se* inadmissible because of the influence of "hypnosis" on the interviews, we do not attempt to fashion a rule of law governing this type of testimony. 19 M.J. at 526. We are confronted, however, with the admissibility of out-of-court statements relied upon by expert witnesses in the formulation of their opinions.

Mil.R.Evid. 703, Manual for Courts-Martial, United States, 1969 (Revised edition), provides that an expert opinion may be based upon "facts or data ... made known to the expert, at or before the hearing.... [T]he facts or data need not be admissible in evidence." The military judge concluded that the psychiatrist could base his expert opinion on the videotaped interviews and indeed could discuss his reliance upon the interviews during his testimony.

Mil.R.Evid. 801(c) defines hearsay as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Appellant contended at trial and now that the tapes were not being offered "for the truth of the matter" but rather for other legitimate purposes. For example, the tapes would attack the credibility of the Government expert's opinion and bolster the defense expert's opinion to prove that there was an underlying factual basis for his opinion.

This situation has been described as a possible attempt to " 'smuggle' " hearsay evidence into the case under the guise that it is not being offered for "the truth of the matter asserted" and thus falls without the definition of hearsay. It is "suggest[ed] that Rule 403 is an appropriate tool for handling the problem. Some explanation for the expert opinion should be provided, but the judge should make sure that no party takes unfair advantage of Rule 703." S. Salzburg, L. Schinasi, and D. Schlueter,

*Military Rules of Evidence Manual* 596 (2d ed. 1986).

We agree that admissibility of these tapes turns on Mil.R.Evid. 403.[2] That rule provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the members, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

We have reservations that evidence which is clearly "exculpatory" or which tends to make it less likely that an accused committed an offense could be excluded because of considerations "of unfair prejudice" to the Government. *See United States v. Gipson*, 24 M.J. 246 (C.M.A.1987); *see also Rock v. Arkansas, supra.* If the evidence is confusing "or misleading," or a "waste of time" (which we take as another way of describing a lack of relevance) or a "needless presentation of cumulative evidence," most certainly a military judge can rule the evidence inadmissible.

■ Here we conclude, as did the Court of Military Review, that the military judge properly excluded the videotapes.[3] First, he permitted the psychiatrist to testify as to the basis of his expert opinion, including testifying about the videotapes and the

"hypnotic" interviews. Second, the admission of the tapes would have clearly given appellant an opportunity to smuggle eight hours of testimony before the court members without subjecting himself to the crucible of cross-examination. *State v. Chase*, 206 Kan. 352, 480 P.2d 62 (1971). Third, as noted by the Court of Military Review, the use of hypnotised testimony itself is not without controversy and may be confusing and misleading. *Rock v. Arkansas, supra.* Fourth, the judge ruled that it was "not necessary" for the "court members [to] ... see the process that he [the psychiatrist] went through in order for them to be able to understand and to determine and apply the basis of his finding as to the ultimate conclusion." Finally, appellant was not denied any opportunity to offer evidence in his own defense, as his expert was allowed to testify fully, and there was no limitation on appellant's ability to testify in his own defense.

Based upon our review of the record, we are satisfied that the military judge did not improperly rule the videotapes inadmissible. Accordingly, there was no error prejudicial to the rights of appellant.

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge EVERETT, and Judge SULLIVAN, concur.

---

**2.** Before analyzing the military judge's ruling under Mil.R.Evid. 403, another distinction is helpful. The avowed purpose for offering the videotapes was to help the members to understand the expert's testimony. This type of evidence has come to be know as "demonstrative" evidence. *United States v. Heatherly*, 21 M.J. 113 (C.M.A.1985). The decision to permit or deny the use of demonstrative evidence has generally been left to the sound discretion of the trial judge. *See generally* Annot., 9 A.L.R.2d 1044 (1950); 41 A.L.R. 4th 877–954 (1985).

**3.** While the admissibility of videotapes of the psychiatric interview presents us with a novel question, various states have confronted the issue and resolved it in various ways. *Compare People v. Cartier*, 51 Cal.2d 590 335 P.2d 114 (1959); *State v. White*, 60 Wash.2d 551, 374 P.2d

942 (1962); *with State v. Chase*, 206 Kan. 352, 480 P.2d 62 (1971). In *Chase*, the trial judge held videotapes of a psychiatric interview of the defendant while under the influence of sodium amytal (a truth serum) was inadmissible, "reasoning that by this means the defendant's version of the facts and the circumstances would be shown to the jury *without being tested by cross-examination." Id.* at 66 (emphasis added). The Supreme Court of Kansas affirmed, finding no abuse of discretion because the doctor "carefully and articulately explained his purpose in administering the drug, its effect on defendant and the benefits derived in evaluating defendant's mental condition." *Id.* at 67. *See also State v. Beachum*, 97 N.M. 682, 643 P.2d 246 (App.1981); *Marshall v. State*, 620 P.2d 443 (Okla.Cr.App.1980); *State v. Taggart*, 14 Or.App. 408, 512 P.2d 1359 (1973).