**UNITED STATES, Appellee,**

v.

**John W. BALDWIN, Technical Sergeant
U.S. Air Force, Appellant.**

No. 54,
No. ACM 25102.

U.S. Court of Military Appeals.

Sept. 24, 1987.

For Appellant: *Colonel Leo L. Sergi* and *Major Deborah A. Baker* (on brief).

For Appellee: *Colonel Joe R. Lamport, Lieutenant Colonel Robert Giovagnoni,* and *Captain Marc Van Nuys* (on brief); *Colonel Kenneth R. Rengert.*

*Opinion of the Court*

SULLIVAN, Judge:

Appellant was tried by a general court-martial at Kessler Air Force Base, Mississippi, in October 1985. He was charged with five specifications of indecent assault on two young girls and one specification of committing an indecent act on a third young girl (Carolyn), in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. Contrary to his pleas, he was found guilty only of the indecent-act offense, and sentenced to a bad-conduct discharge, confinement for 1 year, and reduction to Airman Basic. The convening authority approved, and the Court of Military Review affirmed, the findings and sentence.

We granted review to consider the following issue:

> WHETHER THE MILITARY JUDGE ERRED BY ADMITTING EVIDENCE APPELLANT FAILED AN AFOSI POLYGRAPH WHEN THE VOLUNTARINESS OF HIS WRITTEN STATEMENT WAS NOT CONTESTED.

We hold that the military judge committed prejudicial error in admitting evidence of the results of a polygraph examination under the particular circumstances of this case and reverse. Mil.R.Evid. 403, Manual for Courts-Martial, United States, 1984. *See generally United States v. Mukes,* 18 M.J. 358, 359 (C.M.A.1984). *Cf. United States v. Gipson,* 24 M.J. 246 (C.M.A.1987).

Appellant was found guilty of committing an indecent act on the person of the 11-year-old dependent daughter of another airman. The alleged crime occurred on the evening of April 20, 1985, during a sleepover party for some of his daughter's friends. Carolyn testified that she awoke and felt a hand moving between her upper thighs in a circular motion. Her robe was unbuttoned, and her panties were lowered.

Following the incident, she asked to be taken home, complaining that she did not feel well. Appellant complied with her request. She immediately reported the matter to her parents, who took her to the Base Social Services Office who referred the matter to the Office of Special Investigations (OSI).

On April 21 and 26, 1985, appellant was interviewed by the OSI about this incident as well as several others. During those interviews he gave somewhat differing versions of the events of the evening in question. In one statement he related that he had adjusted the covers over the victim and may have touched her buttocks in the process. He told the interviewer that he did not remember whether Carolyn's robe was unbuttoned. In the second statement, he stated that she appeared to be uncomfortable and as a result, he partially unbuttoned her robe. However, he categorically denied that any of the touchings were for the purpose of sexual gratification. Between the two interviews appellant volunteered to take a polygraph examination. That examination showed some deception concerning the incident with Carolyn. Both statements were admitted into evidence without objection. Evidence of the failed polygraph examination was not admitted prior to the members' initial adjournment for deliberations.

The court deliberated for about 2 hours. It then requested additional instructions on issues not relevant to this appeal. About 90 minutes later the members again returned and inquired if a vote of three to three resulted in a finding. The military judge advised them that this amounted to a finding of not guilty. The members then requested that a portion of Carolyn's testimony related to the movement of her panties be reread and asked that appellant be recalled to the stand. A number of questions were posed to him concerning the portion of his second statement wherein he conceded that his fingers might have been caught in Carolyn's panties.

Trial counsel cross-examined appellant. Appellant's testimony indicated that he was "worn out" at the time of the second statement and cooperated only in order to be allowed to leave. He had provided substantially the same testimony earlier in the trial.

Following his cross-examination, trial counsel requested an Article 39(a), UCMJ, 10 U.S.C. § 839(a), session. He contended that appellant's explanation of the statement had placed its voluntariness in issue and that he should be allowed to ask appellant about the failed polygraph. Defense counsel opposed the request. Trial counsel prevailed and was allowed to ask the following question:

Isn't it true that you volunteered to submit that 26 April '85 statement regarding Carolyn ... immediately upon being told that you had failed a polygraph examination concerning that matter?

Appellant answered, "Yes."

The military judge instructed the members as to the appropriate use of the answer, i.e., that it was limited to their consideration of what appellant was told about the results. He specifically instructed them that the results of the polygraph were not admissible and that they could not speculate as to the results. The members then retired again, and within 30 minutes, convicted appellant of the single specification dealing with Carolyn.

.    .    .    .    .

We hold that admission of evidence of the results of the polygraph examination was prejudicial error in this case. Mil.R. Evid. 103(a). The clear suggestion that appellant had failed a polygraph involving the incident with Carolyn occurred at a critical point in the trial. The members had earlier retired for deliberation on the charges; they then returned and indicated the possibility of a three to three tie in the voting; and, finally, they had just recalled appellant to the stand for specific questions on the incident. Moreover, the presentation of the polygraph was neither necessary nor material to a fair resolution of this case. The members' questions concerned the scope of appellant's pretrial admissions

and did not include specific inquiries concerning the existence of a polygraph exam. Appellant's additional testimony which purportedly justified the polygraph question was no more than a restatement of his earlier testimony which trial counsel belatedly chose to exploit. In this context, admission of the challenged evidence was unduly prejudicial because the prejudicial impact of the polygraph evidence far outweighed whatever probative value it may have possessed on the issue, if any, of the voluntariness of his statement. Mil.R. Evid. 403. *See generally United States v. Abel,* 469 U.S. 45, 53–55, 105 S.Ct. 465, 470–71, 83 L.Ed.2d 450 (1984); *United States v. Stark,* 24 M.J. 381 (C.M.A.1987). Accordingly, admission of the polygraph evidence at this critical stage in the trial was an abuse of discretion and warrants reversal.

The decision of the United States Air Force Court of Military Review is reversed. The findings of guilty and the sentence are set aside. The record of trial is returned to the Judge Advocate General of the Air Force. A rehearing may be ordered.

Chief Judge EVERETT concurs.

COX, Judge (concurring):

Although I agree with the conclusion expressed in the majority opinion that admission of the evidence was unduly prejudicial, citing Mil.R.Evid. 403, I find an additional basis for excluding the evidence.

It is interesting to note that the same military judge who presided in this case also sat in *United States v. Gaines,* 20 M.J. 668 (A.F.C.M.R.1985), *pet. denied,* 21 M.J. 98 (1985). Indeed, the Court of Military Review affirmed this case relying upon the *Gaines* decision. However, the Court of Military Review's and military judge's reliance on *Gaines* was misplaced.

First, Gaines sought to have his confession suppressed on the grounds it was involuntary, making the facts and circumstances attendant thereto relevant for the finders of fact. Baldwin did not contest his pretrial statements; no objection was made

as to their admissibility, and his testimony at trial was consistent with his pretrial statements.

Second, Baldwin never recanted his pretrial statements but, as I read his testimony, he did try to explain the genesis of his admission to OSI agents that it was possible he had touched the child. However, he was adamant throughout that he had never molested the child or confessed to the same.

Third, the testimony by Baldwin that the Government now claims opened the door to bring in evidence of the deceptive polygraph was not proffered by the defense. Rather, it was nonresponsive testimony by Baldwin to questions posed by court members and the resultant cross-examination by trial counsel. If the door was opened at all—and I don't believe it was—it was "tugged open" by trial counsel during cross-examination.

I cannot sanction action by the Government to set up admissibility of evidence such as this by trying, itself, to open the door through the cross-examination of an accused. Absent extraordinary circumstances, I also cannot sanction the door being opened by questions from court members when an able and competent defense counsel has struggled mightily to keep that door closed. This is one of the most important reasons for requiring that accused be provided with counsel.

Last, the facts and circumstances regarding Gaines' confession were relevant to prove it was made voluntarily. Although Baldwin did try to explain his pretrial statement, he never said it had been given involuntarily or that it was untrue. I find nothing in the Government's question which "make[s] the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Mil.R. Evid. 401.

The existence of the pretrial confession was uncontested. Baldwin's trial testimony was consistent with these pretrial statements. Therefore, the "fact that is of con-

sequence," to wit: a voluntary pretrial statement, is not in issue. The question had no relevance.

It seems rather obvious that trial counsel was faced with an undecided panel. After 3 and 1/2 hours of deliberations, they had to inquire about the meaning of a 3–to–3 split in the vote. It appears that trial counsel was more interested in landing the "K–O punch" than he was in explaining the voluntariness of the uncontested pretrial confession. Under these circumstances, I cannot conclude that the error was harmless.

Accordingly, I join my Brothers in reversing the decision below.