**UNITED STATES, Appellee,**

v.

**Everett P. NEELEY, Senior Airman,
U.S. Air Force, Appellant.**

No. 54,317/AF.
ACM 24645.

U.S. Court of Military Appeals.

Sept. 28, 1987.
Certiorari Denied Jan. 11, 1988.
See 108 S.Ct. 710.

For Appellant: *Thomas M. Carpenter, Esq.* (argued); *Charles L. Caprenter, Jr., Esq., Colonel Leo L. Sergi, Lieutenant Colonel Michael D. Wims* (on brief); *Major Harry L. Heintzelman.*

For Appellee: *Major Kathryn I. Taylor* (argued); *Colonel Kenneth R. Rengert* and *Lieutenant Colonel Donal F. Hartman, Jr.* (on brief); *Colonel Joe R. Lamport* and *Lieutenant Colonel Robert E. Giovagnoni.*

*Opinion of the Court*

COX, Judge:

Contrary to his pleas, appellant was convicted of premeditated murder and other offenses, in violation of Articles 118, 128, 134, and 90, Uniform Code of Military Justice, 10 U.S.C. §§ 918, 928, 934, and 890, respectively. He was sentenced to a dishonorable discharge, confinement for life, reduction to E–1, and total forfeitures. The convening authority approved these results, and the Court of Military Review affirmed. 21 M.J. 606 (1985). We granted review to consider:

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF THE ACCUSED WHEN HE ADMITTED INTO EVIDENCE, OVER DEFENSE OBJECTION, THE OPINIONS OF FIVE PSYCHOLOGISTS THAT THE ACCUSED HAD INTENTIONALLY INFLATED THE RESULT OF HIS PSYCHOLOGICAL TEST, SUCH OPINIONS BEING INADMISSIBLE HEARSAY, AND SUCH A RULING BY THE JUDGE DENYING THE ACCUSED HIS RIGHT TO CROSS–EXAMINE AND CONFRONT THE PSYCHOLOGISTS CONCERNING THEIR OPINIONS.

The issue was raised in the following factual context. Appellant and the victim lived together in an off-base trailer. He assaulted and battered the victim by hitting her about the face and head, and, when she informed him that she was moving back to her barracks, he threatened to kill her. His commanding officer was informed of the incident and ordered the appellant to stay away from the victim. Later, in defiance of the order, appellant went to the dining facility where she worked and shot her seven times with a .45–caliber pistol, killing her.

Appellant contested his legal responsibility for the homicide on the basis that he was not mentally competent. In support of this defense, he called two clinical psychologists who asserted that, although appellant was competent to stand trial, he was "more likely than not … unable to conform his behavior to the intent of the law." When they evaluated appellant's mental condition, both psychologists had available for their consideration the test results of three Minnesota Multiphasic Personality Inventories (MMPI). One of the tests had been administered after the assault upon the victim but before she was killed.

In rebuttal, the Government called three psychiatrists who testified that appellant was mentally responsible for the offenses in terms of the appropriate legal standard. *See United States v. Frederick*, 3 M.J. 230 (C.M.A.1977).

It was in the presentation of the Government's case regarding appellant's sanity that the evidence giving rise to the granted issue was presented by trial counsel. The Government called as its witness a clinical psychologist who had reviewed the results of several psychological tests administered to appellant. In this witness' opinion, appellant had intentionally attempted to establish the existence of a psychological condition that did not exist. She further testified over defense objection that she had shown the test results to other psychologists, and she was allowed to state on the record that it "was the consensus among these people when" they were shown the profile "[t]hat it was intentionally inflated."

The Court of Military Review found that, although Mil.R.Evid. 703, Manual for Courts-Martial, United States, 1969 (Revised edition), permits psychologists to rely on the opinions of others, the military judge erred by allowing her to express those other opinions. However, the court ruled that appellant had not been prejudiced by this action. 21 M.J. at 608–09.

Recently, we have had occasion to discuss the problem of smuggling hearsay statements into evidence under the guise of an expert witness relying on the hearsay to form an opinion. *United States v. Stark*, 24 M.J. 381, 384 (C.M.A.1987). Indeed, as recognized by Chief Judge Hodgson, *citing* the editorial comment of S. Saltzburg, L. Schinasi, & D. Schlueter, *Military Rules of*

*Evidence Manual* 596 (2d ed. 1986), that "unless care is taken in utilizing Rule 703, parties can 'smuggle' much hearsay evidence into a case, when such evidence is not properly admitted for its truth." *See United States v. Neeley, supra* 21 M.J. at 608. As we noted in *Stark,* the problem is the admission into evidence of statements that are clearly hearsay under the guise that they are not being offered for " 'the truth of the matter asserted.' " 24 M.J. at 384.

■ As recommended by Saltzburg, Schinasi, & Schlueter, we concluded in *Stark* that Mil.R.Evid. 403 provides an appropriate vehicle for use by the military judge in resolving the admissibility of this type of hearsay evidence. *Id.* We, therefore, reject the black-letter test suggested by Chief Judge Hodgson that "[w]hat must be remembered is that while expert witnesses may rely on hearsay under Rule 703 to form their opinion, the hearsay itself is not admissible." *United States v. Neeley, supra* 21 M.J. at 608, *citing United States v. Ramos,* 725 F.2d 1322 (11th Cir.1984); *Coulter v. Stewart,* 97 N.M. 616, 642 P.2d 602 (1982); and *State v. Towne,* 142 Vt. 241, 453 A.2d 1133 (1982).

We recognize that our disagreement with the court below may be only one of semantics because a statement is not hearsay by definition unless it is "offered in evidence to prove the truth of the matter asserted." Mil.R.Evid. 801(c). We simply believe that the distinction between testimony that is offered 1) for the truth of the matter or 2) to prove the underlying basis for an expert opinion is a line too fine to draw. Mil.R.Evid. 403 is a better vehicle to use in resolving the conflict.

However, Mil.R.Evid 401 should not be overlooked in trying to resolve admissibility of evidence under Mil.R.Evid. 703. Is the proffered evidence *relevant?* What does the evidence tend to prove or disprove about the case? What is the "fact ... of consequence" that is being established?

■ The instant case offers us a classic example. What is the "fact ... of conse-quence" to be proved by the question to the psychologist? If the Government is trying to prove, by offering the hearsay opinions of other psychologists, that appellant intentionally inflated the results of his tests, then the evidence is clearly hearsay and not admissible.

■ If, on the other hand, the Government is seeking to prove that its expert psychologist had a *basis* for her opinion and that experts in her field "reasonably relied upon" the opinions of other psychologists "in forming opinions or inferences," then the evidence was being offered to prove that the witness had a basis for her own expert opinion. And although "the truth of the matter asserted" is *smuggled* into evidence, the only true evidence that appellant inflated the test results came from the witness on the stand.

■ The real question is, therefore: Does the danger of unfair prejudice created by the testimony outweigh its probative value? In this regard, we agree with the court below that there was "no reasonable likelihood" that admission of the evidence "affected the judgment of the triers of fact." *United States v. Neeley, supra* 21 M.J. at 609.

■ We do believe, however, that the military judge should give a limiting instruction concerning the appropriate use of this type of testimony. *Id.* at 608 n. 3. *See United States v. Affleck,* 776 F.2d 1451 (10th Cir.1985); *United States v. Sims,* 514 F.2d 147, 149–50 (9th Cir.), *cert. denied,* 423 U.S. 845, 96 S.Ct. 83, 46 L.Ed.2d 66 (1975) (when "such evidence" is admitted, it "becomes necessary for the court to" give a limiting instruction to the jury). However, failure to do so here does not constitute plain error. *United States v. Fisher,* 21 M.J. 327 (C.M.A.1986); Mil.R.Evid. 105 (upon proper request, limiting instruction shall be given).

The psychologist's testimony related primarily to her own opinion concerning the test results in question. The prosecution did not emphasize the opinions of the other psychologists during appellant's fairly

lengthy trial. Furthermore, three psychiatrists, two of whom participated in the sanity board that examined appellant, unequivocally testified that appellant was criminally responsible for the offenses in question, while the defense psychologists expressed their opinions in terms of "more likely than not." Given the entire record, the danger of unfair prejudice was inconsequential.

We also have examined the entire record of trial and find no "error [which] materially prejudice[d] the substantial rights of the accused." Art. 59(a), UCMJ, 10 U.S.C. § 859(a).

The decision of the United States Air Force Court of Military Review is affirmed.

Judge SULLIVAN concurs.

EVERETT, Chief Judge (concurring in the result):

I fully agree with Chief Judge Hodgson's opinion in this case in the court below. 21 M.J. 606 (1985).

As is becoming increasingly apparent, the liberal treatment of expert testimony under the Federal Rules of Evidence and the Military Rules of Evidence has become an invitation to evade the hearsay prohibition and the defendant's right of confrontation. The present case is a perfect example of this phenomenon.

The defense offered the testimony of two psychologists with eminent qualifications. Their conclusion that appellant had been "in a psychotic state" at the time of the homicide was based in part on psychological tests that had been administered to Neeley. These included the Minnesota Multiphasic Personality Inventory (MMPI) test, which had been administered to Neeley shortly before he killed his girlfriend and which also had been administered after that slaying. In rebuttal, the Government called various witnesses, including Captain Nancy Slicner, a psychologist serving on active duty. She had never interviewed Neeley but had analyzed the MMPI test results. Although she originally had concluded that the tests were "valid" and indicated a thought disorder—a conclusion she

had communicated to the sanity board—her view at the time of trial was that Neeley had "over-endorsed" certain behavior—that is, that he had been faking.

To bolster her testimony, Captain Slicner explained that she had reviewed the test results with five other psychologists. When trial counsel asked her about a "consensus" among the psychologists, defense counsel properly objected. Nonetheless, the witness was allowed to reply that these other psychologists believed the profile had been "intentionally inflated" and so was an unreliable basis for forming an opinion as to appellant's sanity.

As the Court of Military Review perceived, such testimony goes far beyond the leeway conferred by Mil.R.Evid. 703. That Rule purports to embrace only "facts or data"—terms which at first glance would not seem to include opinions of third persons. However, Mil.R.Evid. 703 is identical to Fed.R.Evid. 703, as to which the Advisory Committee's Note specifically states:

> Thus, a physician in his own practice bases his diagnoses on information from numerous sources and of considerable variety, *including* statements by patients and relatives, reports and *opinions from nurses, technicians and other doctors,* hospital records, and X rays.

*See* S. Saltzburg and K. Redden, *Federal Rules of Evidence Manual* 687 (4th ed. 1986). (Emphasis added.)

Although Mil.R.Evid. 703 apparently was intended to allow an expert to base his opinion—at least, in part—on the opinions of other experts, and although Mil.R.Evid. 705 allows an expert to give the reasons for his opinion, I still am unconvinced that, on direct examination and over objection, an expert may go as far as did Captain Slicner. Although an expert should be allowed to testify that he has consulted other experts and considered their opinions in formulating his own conclusion, the specifics of the other experts' opinions cannot be elicited on direct examination, if the hearsay prohibition is to be respected.

If the opposing party wishes to bring to the attention of the factfinder any details

about opinions that were relied on by an expert witness, he can do so on cross-examination. Moreover, if those details are introduced in evidence, the military judge should give a limiting instruction pointing out that this evidence can be utilized only for evaluating whether an adequate basis existed for the opinion of the witness who was testifying in court. Such an approach will eliminate the possibility of unfairness to an accused without unduly limiting the prosecutor in his presentation of relevant evidence.

Although the evidence to which the defense objected should have been excluded, I, too, am convinced by the record that it was not material in procuring appellant's conviction. Therefore, I join in affirming the court below.