UNITED STATES

v.

**Senior Airman Reginald A. MYLES,
FR 438–33–7654, United States
Air Force.**

**ACM 27639.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 8 Feb. 1989.

Decided 29 Sept. 1989.

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair; Captain Darla G. Orndorff and Major G. Michael Lennon, USAFR.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Lieutenant Colonel Robert E. Giovagnoni, Major Terry M. Petrie and Captain Morris D. Davis.

Before LEWIS, BLOMMERS and KASTL, Appellate Military Judges.

## DECISION

LEWIS, Senior Judge:

The appellant, following a contested trial before members, was found guilty of wrongful use of cocaine. This was a urinalysis case. Evidence produced by the prosecution reflected that an unidentified female contacted the appellant's orderly room by telephone and reported that he had been using cocaine. The appellant was confronted with this information and consented to provide a urine sample for testing. Mil.R.Evid. 314(e). The test was positive for the distinctive cocaine metabolite—1,171 nanograms per milliliter (ng/ml) by the gas chromatography/mass spectrometry method. The cutoff for a positive result is 150 ng/ml.

The appellant, in his testimony at trial, admitted smoking marijuana cigarettes on several occasions shortly before he consented to the urinalysis. He had not been charged with wrongful use of marijuana. He opined that his girlfriend had surreptitiously placed cocaine, or some form of it, in one or two of the cigarettes and that he had unknowingly ingested cocaine in that fashion. See United States v. Domingue, 24 M.J. 766 (A.F.C.M.R.1987). He stated that he did not recall experiencing any unusual reaction or sensation that he might have attributed to the presence of a substance other than marijuana.[1] The Government's expert witness, Doctor Naresh C. Jain, a forensic toxicologist, testified in rebuttal. This witness addressed a number

of factors which apparently discredited the innocent ingestion theory raised by the appellant's testimony. Among other things, the expert opined that an individual using cocaine in the manner suggested by the appellant would necessarily experience a numbing sensation in the lips. This, he said, would be a natural reaction of vaporized cocaine coming into contact with one's mouth.

The defense proffered as a surrebuttal witness a retired Air Force member who worked as a drug counsellor at the base and at a college in the local community. The proffered witness had gained knowledge of drug abuse in the local area through courses he had taken and direct contact with drug abusers. The defense offer of proof was that the witness would address two points: (1) that "one of the common practices in this area is for marijuana to be laced with cocaine," and (2) that "depending upon the amount of cocaine and the grade of the cocaine, an individual may not notice a discernible difference from cocaine being placed in marijuana." The trial counsel objected to the proposed testimony. He questioned whether the witness qualified as an expert and noted that the proposed testimony, to the extent it purported to rely upon information furnished by drug abusers, would be hearsay.

■ Based on our reading of the record, the military judge acknowledged that the proffered testimony was appropriate expert testimony if otherwise admissible. We agree. Mil.R.Evid. 702 provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." It is clear that the proffered defense witness did not possess the scientific and technical knowledge of the Government expert, Dr.

1. The appellant's urine had been tested for the marijuana metabolite by the radioimmunoassay screen with a negative result. The defense was in the somewhat anomalous position in this case of attempting to establish that the negative screening, nonetheless, reflected some evidence of the presence of the marijuana metabolite.

Jain. However, on the face of the offer of proof, it would appear that the witness possessed a certain amount of specialized practical knowledge and experience which would enable him to assist the triers of fact in their understanding of certain drug practices in the local area.

An individual's level of expertise does not have to be great to provide the requisite degree of special knowledge to qualify him as an expert. The Court of Military Appeals, in construing Mil.R.Evid. 702 and its civilian counterpart, has stated: "This is a much lower threshold for determining whether a given person is an expert [than the historic expert witness qualification rule enunciated in *Frye v. United States*, 54 App.D.C. 46, 293 Fed. 1013 (1923)] and requires only that the proffered witness have some specialized knowledge as a result of experience or education." *United States v. Mustafa*, 22 M.J. 165, 167–168 (C.M.A.1986), *cert. denied*, 479 U.S. 953, 107 S.Ct. 444, 93 L.Ed.2d 392 (1986). Thus, in *United States v. Jones*, 26 M.J. 197, 200 (C.M.A.1988), the Court opined that a social worker, although not a trained mental health professional, might by virtue of her experience in dealing with mentally retarded clients qualify as an expert for the purpose of explaining certain typical reactions of those severely retarded to relevant stimuli. The witness in *Jones* was in a position to assist the triers of fact because "[t]he behavior patterns and responses of a severely retarded person are probably not familiar to the average court member." *Ibid. See United States v. Anderson*, 851 F.2d 384 (D.C.Cir.1988) (a sociologist's expert testimony exploring the *modus operandi* of pimps and the typical relationship between pimps and their prostitutes was properly admitted).

We can assume that the drug practices as they exist "on the street" in the local community as well as the sensations experienced by certain drug abusers using marijuana laced with cocaine would not be matters with which the the average Air Force court member is familiar. The situation at trial represented a potential confrontation between scientific theory on one hand and the reality of the street on the other. Dr.

Jain's testimony undoubtedly assisted the triers of fact in understanding the various, complex forensic aspects of drug ingestion and detection. Presumably the triers of fact would similarly have been assisted in their understanding of the real world of drug abuse, as observed and experienced, through the testimony of the proffered surrebuttal witness.

■ The trial counsel's related objection was that the proffered testimony relied upon the hearsay of unnamed drug abusers and was, thus, inadmissible. This issue is more difficult to address. An expert opinion may be based upon facts or data which are not otherwise admissible. Mil.R.Evid. 703. This rule does not permit either party to "smuggle" hearsay evidence into the case. *United States v. Neeley*, 25 M.J. 105, 106–107 (C.M.A.1987), *cert. denied*, 484 U.S. 1011, 108 S.Ct. 710, 98 L.Ed.2d 660 (1988); *United States v. Stark*, 24 M.J. 381, 384 (C.M.A.1987). However, as the Court suggested in *Neeley*, this does not mean that such opinion evidence should automatically be excluded. The military judge should carefully scrutinize the proffered evidence pursuant to Mil.R.Evid. 403 to determine if hearsay should be excluded. 25 M.J. at 107. Using further guidance set forth in *Neeley*, the military judge could have probably resolved any issue of unfair prejudice or confusion by instructing the members that testimony as to information provided by others to the witness should be considered only as forming a basis for his opinions but not as establishing the truth of the matters asserted therein. *Ibid.*

Appellate government counsel have argued that the military judge would not have abused his discretion in excluding the testimony based upon inputs from drug abusers in any event. They note that the credibility of drug abusers is highly suspect. In our view, this is an argument that bears on the weight that should be accorded such information, not its admissibility. *United States v. Marymont*, 28 C.M.R. 904, 921 (A.F.B.R.1960), *partially rev'd on other grounds*, 11 U.S.C.M.A. 745, 29 C.M.A. 561 (1960).

If the military judge had any concerns about the witness' expert qualifications and the hearsay nature of the proffered testimony, it would have been appropriate for him to hear the proposed testimony in an Article 39, UCMJ, session before ruling. We agree with the military judge that the defense counsel's offer of proof was sufficient to establish a valid proffer of expert testimony. It would have been error for him to have summarily rejected the witness on either ground cited by the trial counsel.

▇ The military judge sustained the prosecution objection on a more fundamental basis—relevancy. He stated:

Well, the problem I have with the testimony is I think Doctor Jain was quite clear in his testimony that it is a relatively common practice to lace cocaine with marijuana, and further, I think Doctor Jain also testified at length about the different effects you get depending on the quality of marijuana. I just don't see that the witness could add anything and I think that his testimony was quite clear. In his expert opinion, the urinalysis results with regard to THC [referring to the marijuana metabolite] and the urinalysis results with regard to the metabolite of cocaine are inconsistent with simultaneous use.

We find that the military judge erred in excluding the proffered testimony on the basis of relevancy. Based on our reading of the record, the testimony, as summarized in the defense offer of proof, would have had the "tendency to make the existence of any fact that is of consequence to the determination of the action more probable ... than it would be without the evidence." Mil.R.Evid. 401, defining "relevant evidence." In this respect we view Dr. Jain's testimony differently from the military judge. While Dr. Jain testified that smoking cocaine in various forms is not uncommon, we find no suggestion in his testimony that he considered the smoking of marijuana laced with cocaine a common or ordinary form of ingestion. Indeed, we find a strong implication in Dr. Jain's testimony, when considered in its entirety, that smoking cocaine as an additive to a marijuana cigarette would be a very strange and impractical form of ingestion. Thus, the proposed testimony of the drug counsellor that such form of usage was common in the area would have tended to support the plausibility of appellant's theory of innocent ingestion while countering an inference to the contrary.

Likewise, the testimony that other drug abusers had not experienced a noticeable difference between ingesting marijuana and marijuana that had been laced with cocaine would have had the tendency to rebut Dr. Jain's premise that in the latter instance the smoker would experience a discernible numbing sensation. Under the circumstances of this case, we find no reasonable basis for the military judge to have concluded that the proposed testimony was of a nature to have confused the issues, misled the members nor to have resulted in needless presentation of cumulative evidence. Mil.R.Evid. 403. Therefore, we conclude that the military judge abused his discretion in excluding it.

▇ We conclude further that the exclusion of the proffered defense surrebuttal testimony was not prejudicial. While the testimony, as reflected in the offer of proof, would have tended to counter a portion of Dr. Jain's testimony, it would not have countered another portion extremely damaging to the appellant. The Government expert testified that the smoking of a cocaine laced marijuana cigarette, or cigarettes, by the appellant was highly implausible to impossible in light of the positive urinalysis for the cocaine metabolite along with a negative screening for the marijuana metabolite. Dr. Jain also testified that the smoking of a marijuana cigarette laced with any appreciable quantity of cocaine would have required the constant application of a lighter or other means of combustion. No rebuttal of this particular aspect of the expert's testimony was included within the defense offer of proof. See Mil.R.Evid. 103(a)(2). Based on our review of the entire record, we are persuaded that the members would have found the appellant guilty even if the defense witness had

been allowed to testify as indicated in the offer of proof.

Appellate defense counsel have argued that we must apply the constitutional standard in determining prejudice in this case. In other words, we must determine whether the erroneous ruling was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710–711 (1967). We do not agree. The military judge's error was on an evidentiary issue. In our view, the standard of review is governed by Mil.R. Evid. 103(a). Appellate defense counsel, in support of their argument, note that the appellant, as a result of the military judge's ruling, was denied the opportunity to develop his defense to its maximum competence. *See United States v. Barnes,* 8 M.J. 115, 116–117 (C.M.A.1979). Every ruling which erroneously excludes relevant defense evidence theoretically denies an accused the opportunity to develop a defense to its fullest extent. In our view, this does not mean that every such error is of constitutional dimension. Evidence may relate to a factual issue of "consequence" for the purpose of Mil.R.Evid. 401, while falling short of being critical. *But cf. United States v. Walker,* 25 M.J. 713 (A.C.M.R. 1987). For the reasons set forth above, we have concluded that the appellant would have been found guilty even if he had developed his defense to its "maximum competence" through the testimony of the proffered surrebuttal witness. Based on the compelling nature of the prosecution evidence which would have remained unrebutted, we conclude that there is only a slight possibility that the proffered surrebuttal testimony would have influenced the triers of fact in their resolution of the appellant's guilt. *United States v. Barnes,* 8 M.J. at 116.[2]

The findings of guilty and sentence are correct in law and fact and, on the basis of the entire record, are

AFFIRMED.

Judge BLOMMERS concurs.

Senior Judge KASTL (dissenting):

I agree that the military judge erred in not permitting the "street-wise" expert to counter the Government's scholarly expert. I part company with the majority when they find harmless error—that Justice may have become lost a bit but finally found its way home without serious damage. *United States v. Weeks,* 20 M.J. 22, 25 (C.M.A. 1985) (four-prong test for prejudice when proferred testimony is excluded). My specific difficulty is this: *There is no way to measure how much credibility the Government expert would have retained had the defense's Social Actions expert countered him and proved him fallible. See United States v. Johnson,* 20 M.J. 610, 612–613 (A.F.C.M.R.1985); *United States v. Browder,* 19 M.J. 988, 990 (A.F.C.M.R. 1985). Accordingly, I would set aside the findings and sentence, giving the Government the opportunity to order a rehearing.

---

2. We have applied the test for prejudice set forth in *United States v. Weeks,* 20 M.J. 22 (C.M.A.1985). With respect to the first two prongs thereof, we conclude that the Government's case is "strong and conclusive" and that the appellant's defense theory, even with the proffered testimony, is relatively "feeble" by comparison. As to the third prong, the prof-

fered evidence was material, but, for reasons set forth in the opinion, not decisive. On the other hand, we have no doubt that the defense offer of proof was sufficient to satisfy the quality of evidence and lack of substitute criteria set forth in the fourth prong of the *Weeks* test. 20 M.J. 25.