UNITED STATES, Appellee,

v.

**Reginald A. MYLES, Senior Airman,
U.S. Air Force, Appellant.**

No. 63,717.
ACM 27639.

U.S. Court of Military Appeals.

Argued June 13, 1990.

Decided Aug. 27, 1990.

For Appellant: *Captain Darla G. Orndorff* (argued); *Colonel Richard F. O'Hair* (on brief).

For Appellee: *Captain Leonard R. Rippey* (argued); *Colonel Robert E. Giovagnoni* and *Captain Morris D. Davis* (on brief); *Major Terry M. Petrie.*

*Opinion of the Court*

EVERETT, Chief Judge:

Contrary to his pleas, a general court-martial with officer members convicted Myles of one specification of cocaine use, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. The sentence adjudged was a bad-conduct discharge, confinement and forfeiture of $175 pay per month for 6 months, and reduction to airman basic. The convening authority approved the sentence; and the Court of Military Review affirmed the findings and sentence, Judge Kastl dissenting, 29 MJ 589 (1989).

We granted appellant's petition for review of this issue:

WHETHER THE AIR FORCE COURT OF MILITARY REVIEW ERRED WHEN IT HELD THE EXCLUSION OF A DEFENSE PROFFERED WITNESS WAS NOT PREJUDICIAL TO APPELLANT'S CASE.

After reviewing the record of trial, we conclude that exclusion of the proffered evidence was not prejudicial to Myles.

I

On or about September 21, 1988, an anonymous tipster phoned the 693d Organizational Maintenance Squadron's orderly room to report "that SrA Myles was using drugs." Because of this call, appellant was confronted the next day with this allegation; and, after properly waiving his rights, he submitted to a urinalysis. His specimen tested positive for cocaine; and Myles was court-martialed in February 1989.

At trial, the Government relied on a urinalysis report and a detailed stipulation of fact concerning the circumstances under which the urine specimen had been collected and tested. As its only witness, the Government called Dr. Naresh Jain, Ph.D., a forensic toxicologist who has testified in numerous courts-martial; and he explained the significance of the test results. On

cross-examination, defense counsel sought to establish that the testing of appellant's urine specimen had established the presence of marijuana also. This questioning was in line with the defense theory that Myles had smoked some marijuana cigarettes which, unknown to him, had been laced with cocaine.

After the Government had rested, Myles took the stand and testified that he had never knowingly used cocaine. However, on four consecutive nights before the taking of his urine specimen he had smoked marijuana. Indeed, he would not have been surprised if he had tested positive for marijuana.

On cross-examination, trial counsel inquired about appellant's rather extensive use of marijuana and whether he had "notice[d] anything unusual or different"— such as "numbness" in his mouth—when he had smoked the marijuana cigarettes on "each of the four days or evenings previous to the test." According to Myles, the effects were "[j]ust about the same" as on all the other occasions when he had smoked marijuana. Appellant also conceded that he had lied to his first sergeant when—at the time of the urinalysis and again when the results were received—he had insisted that he did not use drugs.

In rebuttal the prosecution recalled Dr. Jain, whom, at trial counsel's request, the military judge had allowed to be present for appellant's testimony. Dr. Jain testified that, if Myles had smoked marijuana to the extent he claimed—four consecutive nights before his urine sample was submitted—the urinalysis would have revealed a higher concentration of marijuana. Moreover, if cocaine had been "put on the marijuana," Myles would have experienced "immediate numbness of the tongue." Thus, according to Dr. Jain, appellant's version of events—and essentially the defense theory as to appellant's unwitting ingestion of cocaine—was not "consistent with the scientific evidence in this case."

The defense had intended to call as a surrebuttal witness Mr. Tommy Anderson,

the Social Actions Officer at appellant's base. His intended testimony was

that one of the common practices in this area is for marijuana to be laced with cocaine. He would further state that depending upon the amount of cocaine and the grade of the cocaine, an individual may not notice a discernible difference from cocaine being placed in the marijuana.

The military judge apparently was satisfied that, on the basis of Mr. Anderson's experience, the defense could qualify him as an expert. However, he excluded the proffered testimony because he concluded that "it was not relevant with the evidence in the posture that I view it and specifically, with regard to the testimony of Doctor Jain."

When this ruling was reviewed by the court below, all three of its judges agreed "that the military judge erred in excluding the proffered testimony on the basis of relevancy." 29 MJ at 592. According to Senior Judge Lewis, writing for the majority:

While Dr. Jain testified that smoking cocaine in various forms is not uncommon, we find no suggestion in his testimony that he considered the smoking of marijuana laced with cocaine a common or ordinary form of ingestion. Indeed, we find a strong implication in Dr. Jain's testimony, when considered in its entirety, that smoking cocaine as an additive to a marijuana cigarette would be a very strange and impractical form of ingestion. Thus, the proposed testimony of the drug counsellor that such form of usage was common in the area would have tended to support the plausibility of appellant's theory of innocent ingestion while countering an inference to the contrary.

Likewise, the testimony that other drug abusers had not experienced a noticeable difference between ingesting marijuana and marijuana that had been laced with cocaine would have had the tendency to rebut Dr. Jain's premise that in the latter instance the smoker would

experience a discernible numbing sensation.

*Id.* at 592.

Judge Lewis concluded, however, that the error was not prejudicial. He explained:

While the testimony, as reflected in the offer of proof, would have tended to counter a portion of Dr. Jain's testimony, it would not have countered another portion extremely damaging to the appellant. The Government expert testified that the smoking of a cocaine laced marijuana cigarette, or cigarettes, by the appellant was highly implausible to impossible in light of the positive urinalysis for the cocaine metabolite along with a negative screening for the marijuana metabolite. Dr. Jain also testified that the smoking of a marijuana cigarette laced with any appreciable quantity of cocaine would have required the constant application of a lighter or other means of combustion. No rebuttal of this particular aspect of the expert's testimony was included within the defense offer of proof. *See* Mil.R.Evid. 103(a)(2). Based on our review of the entire record, we are persuaded that the members would have found the appellant guilty even if the defense witness had been allowed to testify as indicated in the offer of proof.

29 MJ at 592–93.

Senior Judge Kastl dissented because there was "no way to measure how much credibility the Government expert would have retained had the defense's Social Action expert countered him and proved him fallible." *Id.* at 593 (emphasis omitted).

## II

Our review of the record results in the same conclusion as that reached by the majority of the Court of Military Review. To us, the possibility seems very remote that Mr. Anderson's testimony would have created a reasonable doubt as to appellant's knowledge that he was ingesting cocaine.

Furthermore, there is a fatal flaw in the defense theory that Myles was not guilty of cocaine use because he believed that he was smoking marijuana. In *United States v. Mance*, 26 MJ 244, 254 (CMA), *cert. denied*, 488 U.S. 942, 109 S.Ct. 367, 102 L.Ed.2d 356 (1988), we discussed the level of knowledge required for "wrongfulness" in these terms:

Of course, for possession or use to be "wrongful," it is not necessary that the accused have been aware of the precise identity of the controlled substance, so long as he is aware that it is a controlled substance. For example, if he believes he possesses cocaine when, in fact, he possesses heroin, he could be convicted of wrongful possession of heroin because he had "knowledge" adequate to establish wrongfulness.

(Footnote omitted.)

As stated recently by the Air Force Court of Military Review:

To be a viable defense, an accused's mistaken belief as to what illegal substance he possesses must be such that his conduct *would have been lawful had the facts been as he reasonably believed them to be.*

*United States v. Vega*, 29 MJ 892, 893 (1989). *See also United States v. Coker*, 2 MJ 304 (AFCMR 1976); *United States v. Anderson*, 46 CMR 1073 (AFCMR 1973).

When appellant was smoking marijuana cigarettes, he realized that he was using a controlled substance in violation of the Uniform Code. Admittedly, the maximum punishment for wrongful use of marijuana is only 2 years' confinement, rather than the 5 years' confinement authorized for wrongful use of other controlled substances. *See* para. 37e, Part IV, Manual for Courts-Martial, United States, 1984. However, in our view, this variation in the maximum punishments prescribed by the President for use of controlled substances does not alter the basic principle that the identity of the controlled substance ingested is not important in determining the wrongfulness of its

use.*

The testimony of the defense expert was offered to establish a theory that was legally flawed. Therefore, we are doubly convinced that the military judge's ruling did not prejudice appellant.

---

* Trial counsel made this same point in arguing unsuccessfully for modification of an instruc-

## III

The decision of the United States Air Force Court of Military Review is affirmed.

Judges COX and SULLIVAN concur.

tion requested by the defense.