### UNITED STATES
### v.
### Technical Sergeant Charles R. COMBS, Sr., FR496–66–9603, United States Air Force.
### ACM 29350.

U.S. Air Force Court of Military Review.

Sentence Adjudged 26 Sept. 1990.

Decided Oct. 8, 1992.

Appellate Counsel for the Appellant: Captain Ursula P. Moul (argued), Colonel Jeffrey R. Owens, Major Mary C. Yastishock, and Major Alice M. Kottmyer.

Appellate Counsel for the United States: Major Jeffrey C. Lindquist (argued), Lieutenant Colonel Brenda J. Hollis, Lieutenant Colonel Jeffery T. Infelise, and Major Paul H. Blackwell, Jr.

Before LEONARD, JAMES, and JOHNSON, Appellate Military Judges.

## OPINION OF THE COURT

JOHNSON, Judge:

Technical Sergeant Combs was convicted by a general court-martial at Kadena Air Base, Okinawa, of the unpremeditated murder of his 18–month–old son, battery of his 3–year–old daughter, and disobedience of an order not to be alone with his children. He was sentenced to dishonorable discharge, confinement for 50 years, total forfeitures, and reduction to E–1. He raises a number of issues, one of which we conclude requires that we set aside his conviction of unpremeditated murder.

■■■ In February 1990, appellant was living in government quarters at Camp Foster, Okinawa, with his wife and their two children. On 14 February 1990, his daughter Leslie suffered a broken thigh bone. Combs admitted, during an interview with agents of the Office of Special Investigations, that the fracture must have happened when he struck her. Combs was given a room in his squadron's barracks, and his first sergeant ordered him not to be alone with either of his children. Leslie was hospitalized for 14 days for treatment, and her leg was placed in a cast. Comb's son, Charles, Jr., was briefly placed in a foster home, but he was returned to his mother when investigation indicated that Mrs. Combs was not implicated in abuse of the children. The first sergeant amended his order to permit appellant to be with his children if his wife was present. Appellant continued to live in the barracks.

On 28 March 1990, appellant's wife asked him to come home after he worked a 12–hour night shift and stay with the children while she went to work. Appellant did so, thereby violating his first sergeant's order not to be alone with the children. Later that day, an ambulance was called to appellant's quarters to treat Charles, Jr., who was unconscious. Doctors found that he had suffered massive injuries to his central nervous system. On 6 April 1990, hospital officials determined that he was brain dead. With his mother's consent they removed him from life support systems, and shortly afterward he was clinically dead.

Appellant admitted shaking his son. Expert witnesses testified that the child's injuries were consistent with "shaken baby syndrome." The primary issue at trial became whether appellant had the specific intent required for conviction of unpremeditated murder.

Appellant pleaded not guilty to all three charges, but he admitted the conduct that underlay the battery and disobedience offenses. He presented no defense except his counsel's argument that the combination of financial hardship and his wife's request that he stay with the children on 28 March 1990 made his disobedience not "willful." We find the findings of guilty on these two charges to be legally and factually sufficient, and they are affirmed.

## CHALLENGE FOR CAUSE

Appellant assigns as error that the military judge failed to grant appellant's challenge for cause against a member whose wife ran a child care center and who had discussed with him the training she received in identifying possible victims of child abuse. The same court member stated he had several children, the youngest of whom was 3 years old, and that he personally did not believe in corporal punishment of any kind. After extensive voir dire by both counsel and the military judge, the defense counsel challenged the member for cause. The military judge denied the challenge.

Our task on review is not to substitute our judgment for that of the military judge, but rather to determine whether the military judge's denial of the challenge for cause constituted an abuse of discretion. *United States v. Nigro,* 28 M.J. 415 (C.M.A.1989). In this case the member stated on voir dire that his conversations with his wife concerning child abuse were casual and that he did not seek to impose his views on corporal punishment on other parents. On the specific facts of this case, we find that the military judge did not abuse his discretion in denying the challenge for cause.

## ADMISSION OF VICTIM PHOTOGRAPHS

Appellant assigns as error that the military judge admitted, over defense objection, certain photographs of both victims. The issue concerning the photograph of Charles, Jr., is moot, given our disposition of the unpremeditated murder charge.

The other photograph in issue depicts Leslie Combs' head and upper body as she lay in a hospital bed. It accompanied two other photographs of Leslie's leg in a cast and traction, to which the defense raised no objection. The defense objected to the photograph of Leslie's head and upper body both for lack of relevance under Mil. R.Evid. 402, and on the ground that it was unfairly inflammatory under Mil.R.Evid. 403. The military judge found that the photograph was relevant, in that "it reduces the case from an amorphous victim to a specific victim." He further found that there was nothing inflammatory or unduly prejudicial about it.

Most issues concerning victim photographs involve balancing their relevance against potential undue prejudice from their depiction of gruesome injuries or disfigurement. *See generally United States v. Mobley,* 28 M.J. 1024, 1028–32 (A.F.C.M.R.1989), *set aside on other grounds,* 31 M.J. 273 (C.M.A.1990); *United States v. Nixon,* 30 M.J. 501, 503 (A.F.C.M.R.1989), *pet. denied,* 31 M.J. 435 (C.M.A.1990). These cases hold that military judges have broad discretion in weighing the probative value of such evidence against its possible inflammatory or other unduly prejudicial impact on the trier of fact. Our review of the military judge's ruling is therefore limited to the question whether the military judge abused his discretion in admitting this photograph. Both the prosecution and defense are entitled to present to the trier of fact certain basic information about the victim of an alleged offense, either for a specific evidentiary purpose such as establishing the victim's identity, size, or apparent physical condition, or to help the court formulate an accurate mental picture of the circumstances of the offense. *See United States v. Grandison,* 780 F.2d 425 (4th Cir.1985), *cert. denied,* 495 U.S. 934, 110 S.Ct. 2178, 109 L.Ed.2d 507 (1990). We do not believe there is any danger of undue prejudice in most situations from admitting victim photographs, or in this case from admitting the waist-up photograph of Leslie in her hospital bed. We find that the military judge

did not abuse his discretion in admitting this exhibit.

## DEFENSE EXPERT EXCLUDED

The central issue in this case is appellant's complaint that the military judge excluded from evidence the testimony of Colonel (Dr.) William H. Grant, a forensic psychiatrist whose testimony was offered by the defense on the issue whether appellant had the requisite specific intent necessary for a finding of unpremeditated murder. The other elements were fairly solidly established by the evidence. Appellant was alone with the victim when the injuries occurred, and he made pretrial statements that, while conflicting and ambiguous, could be interpreted as admissions that he shook his son. Expert witnesses for the prosecution testified that the victim's injuries were consistent with the "shaken baby syndrome." As a practical matter, the only remaining issue was mens rea, the outcome of which would determine whether appellant was convicted of the charged offense of unpremeditated murder, or perhaps of a lesser included offense such as involuntary manslaughter, negligent homicide, or assault on a child under 16 years.

One of the elements of the offense of unpremeditated murder under Article 118, UCMJ, 10 U.S.C. § 918 (1988), is that the accused had the intent to kill or to cause great bodily harm. This is a specific intent offense, but the finder of fact may be convinced beyond a reasonable doubt that the accused had the requisite intent by applying an inference that one intends the natural and probable consequences of his acts. Manual For Courts–Martial, United States, Part IV, paragraph 43d(3) (1984); *United States v. Varraso*, 21 M.J. 129 (C.M.A.1985), *cert. denied*, 475 U.S. 1124, 106 S.Ct. 1645, 90 L.Ed.2d 190 (1986).

There was no direct evidence of appellant's intent at the time he shook the victim. The prosecution relied entirely on the theory that he must have known shaking an 18–month–old child with the force he used would have killed the child or caused it great bodily harm, and he, therefore, must have intended those consequences.

The prosecution presented the testimony of two pathologists who described the victim's injuries and testified he had to have been shaken repeatedly with a great deal of force to cause those injuries.

The defense attacked the prosecution case by showing through cross-examination of the government's experts that the dangers from shaking small children were not generally known, even in the medical community. It also elicited concessions from the experts that no one in the medical community had any data on how much force was required to produce injuries like those the victim suffered. In its case in chief, the defense called appellant's supervisor, who testified appellant loved his son dearly, and was always talking about him and displaying photographs and videotapes of him. This witness also described many severe stresses operating on appellant at the time, including long duty hours, financial problems, marital discord, and the continuing investigation concerning Leslie's broken leg. Appellant did not testify. The third and perhaps most important element in the defense strategy was to be the testimony of Dr. Grant.

Dr. Grant was at the time the only forensic psychiatrist on active duty in the Air Force. A forensic psychiatrist is trained both in psychiatry and in the use of psychiatry in legal proceedings. At the time of appellant's trial he had testified in numerous courts-martial and had consulted in many other cases. He was readily accepted as an expert in forensic psychiatry. He testified he had reviewed the investigative reports in appellant's case, as well as all mental health records (including the reports of two mental evaluation boards), Family Service Center records, and Family Advocacy records. He had interviewed appellant's supervisor, his second level supervisor, his first sergeant, his first wife, his current wife, and members of his squadron. He had talked with appellant for 12 hours on the telephone, and for 8 hours in person. He had also done an extensive review of the psychiatric literature on child abuse.

Dr. Grant initially testified in a session without the members present,[1] that he was prepared to tell the members that (1) appellant did not intend to kill his son and (2) he could not have formed the intent to do so. He based this second conclusion on the many stresses that were on appellant at the time of the alleged offense and on the results of personality testing during appellant's mental evaluation boards, which concluded that appellant was prone to "ego disintegration" under stress. This meant that his ability to think rationally was diminished when under stress and that he would act more on emotion than logic.

 The trial counsel initially announced that he would not object to Dr. Grant's expected testimony that appellant could not have formed the intent to kill his son.[2] He expressed no position on Dr. Grant's expected testimony that appellant did not in fact have such an intent. At this point the trial recessed, and when the parties returned Dr. Grant's expected testimony had changed. The trial counsel had provided Dr. Grant a letter the trial counsel received during his trial preparations from a member of one of appellant's mental evaluation boards, which together with follow-up telephone consultations convinced Dr. Grant that he had misunderstood the men-

tal evaluation board report.[3] Its finding that appellant suffered from ego disintegration applied only to his condition during the board, after his son's death, and when he was in pretrial confinement. No similar finding was made about his mental capacity at the time of the alleged offense. Based on this changed information, Dr. Grant testified that he no longer could conclude that appellant could not have intended his son's death. He remained of the opinion that he did not intend that result. He based this opinion on appellant's love for his son, the lack of apparent lethality of his actions, and his analysis of typical child abusers, who he believed wanted primarily to discipline their children and not to kill them.

These Article 39(a) sessions occurred after the prosecution rested its case in chief. The trial counsel objected to Dr. Grant's expected testimony, and the trial judge ultimately ruled that Dr. Grant would not be allowed to testify before the members. His statement of reasons may be summarized as follows:

—The witness' reliance on the proposition that shaking a child is not an act of apparent lethality disregards the fact that a specific intent to cause great bodily harm

---

1. Article 39(a), UCMJ.

2. The parties discussed the fact that Dr. Grant's testimony related directly to an "ultimate issue" in the case, but they concluded properly that such evidence is admissible. Mil.R.Evid. 704, *United States v. Berri*, 33 M.J. 337 (C.M.A.1991).

3. This letter had not been disclosed to the defense. The trial counsel argued that it was attorney work product and need not have been disclosed. The military judge ruled that it should have been disclosed. It astonishes us that, after so many years of emphasis by authorities throughout the military justice system, there are still trial counsel and staff judge advocates who apparently do not understand that full disclosure to the defense is absolutely necessary, both as a matter of fairness and as a matter of efficient administration of justice. In this case, the failure to disclose the letter in question generated considerable confusion as a key witness changed his evaluation of the central issue in the case in the middle of the trial. This confusion may well have contributed to the military judge's decision to exclude the witness'

testimony, which we find to have been erroneous. Defense counsel announced that if the defense had known Dr. Grant would change his position on the issue of whether appellant could have formed the specific intent to kill his son, they would have changed their trial strategy. Since they had already conducted their cross-examination of the government experts, it was too late to do so effectively. It was then discovered that the last of a series of three Office of Special Investigations reports concerning appellant had never been provided to the defense, although trial counsel had given copies of several witness statements from it to defense counsel several days before trial. The military judge found it necessary to recess the trial and send the members home for half a day at this point, after the government's case in chief had concluded, so counsel could review all the investigative reports. Not much more would be required for the trial judge to find a denial of due process resulting from denial of disclosure to the defense. We caution all prosecuting authorities to give scrupulous attention to their vital responsibilities for disclosure to the defense, and to resolve any doubt in favor of disclosure.

will also support a conviction for unpremeditated murder;

—The witness did not indicate that he has knowledge of the amount of force needed to cause the injuries in this specific case;

—The witness' testimony is inconsistent in that he bases his opinion partially on the accused's love for his child, while he also maintains that child abusers generally resent the child they abuse;

—The witness has not been able to discuss the circumstances of the alleged offense with the accused, who denied having any detailed recollection of the events;

—Expert testimony that the accused is unlikely to have intended the death of his son because he loved him is unnecessary, because it is within the competence of the panel members; and

—The foundation for the witness' testimony requires discussion of considerable inadmissible hearsay, some of which concerns other uncharged acts of child abuse by the accused.

The military judge found, in summary, that there was inadequate foundation for the witness' testimony, it was largely speculative, and it would not assist the members but would rather confuse and mislead them. He therefore ruled the testimony inadmissible under Mil.R.Evid. 401, 403, and 702.

Expert testimony is governed by the general rules of admissibility in Mil.R.Evid. 401–403, and by the more specific provisions of Mil.R.Evid. 701–707. Generally, expert testimony is admissible if a proper foundation is presented and where the testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." Mil.R.Evid. 702. The clear trends in military jurisprudence are to relax the standards for foundational requirements and to view liberally the question of whether the expert's testimony may assist the trier of fact. *United States v. Mustafa*, 22 M.J. 165 (C.M.A.1986), *cert. denied*, 479 U.S. 953, 107 S.Ct. 444, 93 L.Ed.2d 392 (1986), *United States v. Gipson*, 24 M.J.

246 (C.M.A.1987), *United States v. Stark*, 30 M.J. 328 (C.M.A.1990).

The military judge and counsel for both sides demonstrated familiarity with these evidentiary rules in their extensive discussions of Dr. Grant's testimony and that of four experts who testified for the government. Pertinent decisions of the Court of Military Appeals were discussed, including *Ellis v. Jacob*, 26 M.J. 90 (C.M.A.1988) and *United States v. Hill–Dunning*, 26 M.J. 260 (C.M.A.1988), *cert. denied*, 488 U.S. 967, 109 S.Ct. 494, 102 L.Ed.2d 531 (1988). The military judge applied a very liberal standard in permitting two government experts to compare the victim's injuries to those of an infant who fell three stories and of an adult who was thrown through the windshield of an automobile. He ruled that issues of weight and interpretation of this evidence could be dealt with adequately during cross-examination or rebuttal.

▉ It appears the military judge applied a narrower standard when he excluded Dr. Grant's testimony. His articulated reasons included reference to a "necessity" standard, rather than a "helpful" standard. He declined to rely on cross-examination or rebuttal to test the weight to be given the expert's opinion or to clear up potential confusion or a tendency to mislead. Several of the other reasons articulated by the military judge for excluding Dr. Grant's testimony are at variance with case law. In *United States v. Myles*, 29 M.J. 589 (A.F.C.M.R.1989), this Court pointed out that hearsay relied upon as part of the basis for an expert's opinion can usually be dealt with adequately by limiting instructions. Mental health experts need not always have interviewed a person before expressing an opinion concerning his or her behavior or state of mind. *United States v. Hammond*, 17 M.J. 218 (C.M.A.1984); *United States v. Peel*, 29 M.J. 235 (C.M.A. 1989), *cert. denied*, 493 U.S. 1025, 110 S.Ct. 731, 107 L.Ed.2d 750 (1990); *United States v. Johnson*, 35 M.J. 17 (C.M.A.1992); *United States v. Stinson*, 34 M.J. 233, 239 (C.M.A.1992).

Most importantly, exclusion of Dr. Grant's testimony deprived appellant of an

indispensable element of his defense. This is an especially important factor coming as it did after the government's case in chief and the defense cross-examination of all the government's witnesses. In *Gipson,* in discussing the admissibility of a defense-offered polygraph, the Court discussed the proposition that accused persons have a constitutional right to present exculpatory evidence and that due process considerations demand some relaxation of the evidentiary rules governing the testimony of expert witnesses when they would preclude the defense from introducing essential evidence. The court stated, at 252:

> Due process may have an impact in two respects, however: First, in deciding whether defense evidence satisfies the relevance and helpfulness standards; second, in deciding whether the probative value of the evidence is outweighed by extraneous factors (Mil.R.Evid. 403). Perhaps in these areas, judges should bend even further than normal in the direction of giving the accused the benefit of the doubt.

Similarly, in *United States v. Walker,* 25 M.J. 713, 716 (C.M.A.1987), in discussing the admissibility of certain defense psychiatric testimony, the Court stated:

> While '[t]he Sixth Amendment does not by its terms grant to a criminal defendant the right to secure the attendance of any and all witnesses,' *United States v. Valenzuela–Bernal,* 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193 (1982), it does entitle criminal defendants to the production of witnesses whose testimony is relevant and necessary. *Id.;* R.C.M. 703(b)(1) (parties entitled to 'the production of any witness whose testimony on a matter in issue on the merits or on an interlocutory question would be

relevant and necessary'). *See also* M.C.M., 1984, Military Rules of Evidence 401. Moreover, rules of procedure and evidence are 'liberally construed in favor of permitting an accused the right to be heard *fully* in his defense.' *United States v. Coffin,* 25 M.J. 32, 34 (C.M.A. 1987). *See also United States v. Williams,* 23 M.J. 362 (C.M.A.1987).

There is no doubt in this case that Dr. Grant's testimony was key to the defense case. After consideration of appellant's constitutional right to present a defense, and with the advantage of a complete and orderly record to review, we find that excluding Dr. Grant's testimony in the circumstances of this case was an abuse of discretion by the military judge. Applying the test for prejudice in *United States v. Weeks,* 20 M.J. 22, 25 (C.M.A.1985), and in *United States v. Sawyer,* 32 M.J. 917 (A.F.C.M.R.1991), we further find that appellant was substantially prejudiced as to the charge of unpremeditated murder. The findings as to that charge and its specification are therefore set aside.

In view of our disposition of the unpremeditated murder charge, the remaining issues raised by appellate counsel are moot.[4] Additionally, appellant raised a number of issues in a 1 May 1991 letter to the convening authority, styled Request for Corrective Action and Clemency, and in various documents submitted to this Court under *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982). Appellate counsel appropriately filed these documents with this Court and summarized their contents. We have carefully considered each issue raised in these submissions, and we find them to be without merit. In particular, we have examined, in detail, appellant's complaints of ineffective representation of counsel and find them to be wholly without substance.

**4.** Appellant's motion to sever was based primarily on the perceived danger that prosecution evidence concerning the charges of battery upon Leslie and disobedience would "spill over" to the panel member's deliberations on the unpremeditated murder charge. We need not decide this issue, but if a retrial of the unpremeditated murder charge is ordered, a related issue

may arise concerning use of appellant's conviction of these charges to rebut a defense of accident, parental discipline privilege, or for some other purpose. The parties to any retrial would profit from reading the opinion in *United States v. Curry,* 31 M.J. 359 (C.M.A.1990), which discusses these issues in a somewhat similar fact pattern.

The findings of guilty of Charges I and III and their specifications are affirmed. The findings of guilty of Charge II and its specification are set aside. The sentence is set aside. A rehearing on Charge II and its specification and on the sentence may be ordered.

Senior Judge LEONARD and Judge JAMES concur.